UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **D'AQUILA ADVISORS LLC**<br><br>Plaintiff,<br><br>  vs.<br>**KIRSTJEN M. NIELSEN**, Secretary of Homeland Security<br>Washington, DC  20528<br><br>**L.FRANCIS CISSNA**, Director of the United States Citizenship and Immigration Services<br><br>**KATHY BARAN**, Director of the United States Citizenship and Immigration Services' California Service Center<br><br>          Defendants. | Case No. 19-0036 TNM<br><br>**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

TABLE OF AUTHORITIES

FEDERAL COURT CASES

* *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905 (1997)……………………………….......12,13

*Christensen v. Harris County*, 529 U.S. 576  (2000)…………………………………………..9

*Corley v. United States*, 556 U.S. 303, S. Ct. 1558 2009)…………………………………...11

*Eva Care Grp., LLC v. Baran*, No. CV 17-4250-DMG (JPRx), 2018 U.S. Dist. LEXIS 218854, (C.D. Cal. May 23, 2018)……………………………………………………………. 6

*Fano v O'Neill*, 806 F.2d 1262 (5th Cir. 1987)……………………………………………......10

*Hibbs v. Winn*, 542 U.S. 88, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004) ……………………….11

* *Kisor v. Wilkie*, No. 18-15, 2019 U.S. LEXIS 4397 (June 26, 2019)………………....…….13,14

*Loa-Herrera v. Trominski*, 231 F.3d 984, (5TH Cir. 2000)………………………..………..10

*Moskal v. United States*, 498 U.S. 103 (1990) (Scalia, J., dissenting) …………………………..12

*National Basketball Retired Players Ass`n v. USCIS ("NBRPA")*, No. 16 CV 09454, 2017 WL 2653081, (N.D. Ill. June 20, 2017)……………………………………...………………… 4,5,6

*Prokopenko v. Ashcroft*, 372 F.3d 941 (8th Cir. 2004)…………………………………….. 9

*Romeiro de Silva v. Smith*, 113 F.2d 1021  (9th Cir. 1985)……………………….………...…..10

*Wing Ding Chan v. Immigration & Naturalization Serv.*, 203 U.S. App. D.C. 396, 631 F.2d  978  (1980) ………………………………………………………………….…………….6

Wong Wing Wang v. *INS*, 360 F.2d 715 (2d Cir. 1966)………………………………….………………………………………….. 6

CODE OF FEDERAL REGULATIONS

8 C.F.R. part 3…………………………………………………………………………….. 12

*8 C.F.R. § 103.2(a)(7)……………………………………………………………………….. 4

*8 C.F.R. § 103.5 ………………………………………………………………………...……7,11

*8 C.F.R. § 103.5(a)(2)………………………………………………………………………..15

8 C.F.R. part 210 ……………………………………………………………………………...12

8 C.F.R. § 214.2(h)(8)(ii)(B) ………………………………………………………………..4,5

8 C.F.R. § 214.2(h)(9)(B)(sic)[1]………………………………………………………….....4,5

8 C.F.R. 214.2(h)(9)(ii)(B) …………………………………………………….…………,6,7

8 C.F.R. part 242 …………………………………………………………………………...12

8 C.F.R. part 245a……………………………………………………………………………..12

PUBLISHED ADMINISTRATIVE DECISIONS

*Matter of H-N*, 22 I. & N. Dec. 1039 (B.I.A. October 13, 1999). ………………………….11

UNPUBLISHED ADMINISTRATIVE DECISIONS

* In re Mendez, 2007 Immig. Rptr. LEXIS 5866  (BIA 2007)………………………………9

IN RE: Petitioner: [redacted] 2009 Immig. Rptr. LEXIS 7453, WAC 08 207 50753………….. 10

TREATISES

Scalia and Garner's Reading Law: The Interpretation of Legal Texts, Thomson West…………..8

N. Singer, Statutes and Statutory Construction (rev. 6th ed. 2000);……………………. 11

ADMINISTRATIVE MANUALS

Administrative Appeals Office Practice Manual ……………………………………………….9

---

[1] This regulation does not appear to exist.

The plaintiff, D'Aquila Advisors LLC (D'Aquila) is entitled to summary judgment inasmuch as the USCIS has failed to articulate a valid basis for rejecting its H-1B petition nor its motion to reconsider and reopen the rejection of that petition.

    I.    THE REJECTION OF D'AQUILA'S H-1B PETITION WAS NOT IN ACCORDANCE WITH LAW

*A. THE REJECTION OF D'AQUILA'S PETITION WAS NOT IN ACCORDANCE WITH LAW BECAUSE IT SOUGHT THE BENEFICIARY'S SERVICES BOTH IN FY 2019 AS WELL AS FY 2018.*

The parties agree that the regulation governing the rejection of request for benefits (such as the instant petition) is 8 C.F.R. § 103.2(a)(7) which provides, among other things, that such a request may be rejected if it is not filed in compliance with the applicable regulations. Here, the agency's sole justification for this rejection was that the petition was supposedly not filed in compliance with 8 C.F.R. § 214.2(h)(8)(ii)(B), which provides that "[p]etitions subject to a numerical limitation not randomly selected or that were received after the final receipt date will be rejected." The USCIS claims that this justifies the rejection of D'Aquila's petition because "Plaintiff's petition lists an intended start date of October 1, 2017, AR 137, which was the first day of Fiscal Year 2018. The filing period for petitions requesting an intended start date in Fiscal Year 2018 began on April 3, 2017, six months before the first day of that fiscal year, *see* 8 C.F.R. § 214.2(h)(9)(B), and closed on April 7, 2017, *see* 8 C.F.R. § 214.2(h)(8)(ii)(B)."[1] ECF Doc. 14-1 at 14. However there is no 8 C.F.R. §

---

[1] The USCIS quotes *National Basketball Retired Players Ass`n v. USCIS ("NBRPA")*, No. 16 CV 09454, 2017 WL 2653081, *5 (N.D. Ill. June 20, 2017) for the proposition that "it does not follow that the agency *may not* reject any signed, executed, and properly paid-for petition for some other reason." However, it cites no other reason for rejecting D'Aquilla's petition except its supposed incompatibility with 8 C.F.R. § 214.2(h)(8)(ii)(B), and so *NBRPA's* dicta is irrelevant.

214.2(h)(9)(B)(2018)[2], and while 8 C.F.R. § 214.2(h)(8)(ii)(B) refers to a final receipt date, nowhere does it specify, directly or indirectly, what that date was for petitions seeking a beneficiary's services in Fiscal Year 2018.

Be that as it may, the USCIS in any event fails to explain how D'Aquila's petition was not filed in compliance with § 214.2(h)(8)(ii)(B). Regardless of the fact that it sought the beneficiary's services for Fiscal Year 2018, it also sought her services for FY 2019 as well. Inasmuch as it was not filed beyond the final receipt date for FY 2019, D'Aquila's petition was not contrary to § 214.2(h)(8)(ii)(B) and so its rejection was not in accordance with law.[3]

*NBRPA* is not to the contrary. Although the USCIS claims that *NBRPA* held "that USCIS's rejection of the plaintiff's H-1B petition, on the grounds that the petition listed an incorrect start date, was not contrary to law", ECF Doc. at 16, that is not in fact what its ruling was. Rather, the basis for the decision was that "(t)he USCIS looked at that statutorily required **LCA** when

---

[2] This and all other assertions regarding the Code of Federal Regulations in this memorandum are based upon the Code of Federal Regulations for 2018 published by the Government Printing Office online at
https://www.govinfo.gov/app/collection/cfr/2018/title8/chapterI/subchapterB/part214, pdf version.

[3] D'Aquila concedes that if USCIS regulations required that it either approve or deny a petition for the entire period requested then the rejection of its petition might have been lawful. But they do not. Just the contrary, 8 C.F.R. 214.2(h)(9)(ii)(B) expressly provides that "(i)f a new H petition is approved after the date the petitioner indicates that the services or training will begin, the approved petition and approval notice shall show a validity period commencing with the date of approval …" (emphasis added). Accordingly, had the USCIS approved D'Aquila's petition on any date within FY 2019 it not only could, but was required, to make that the start date of the petition approval period, thereby completely mooting the fact that the period in which it sought the beneficiary's services inadvertently included FY 2018.

evaluating the petition, and informed the NBRPA that it was rejecting the petition because it indicated an employment start date earlier than the start of fiscal year 2017." NBRPA at *5. An "LCA" (labor condition application) is not a petition but rather a document filed with the Department of Labor as a prerequisite to filing an H-1B petition. Accordingly, NBPRA is not on point. But even if it stood for the proposition USCIS cited it for it still would have no persuasive value inasmuch as it failed to even consider D'Aquila's argument here, that its petition was timely because it sought the beneficiary's services in FY 2019 as well as 2018.

Far more relevant and persuasive is Eva Care Grp., LLC v. Baran, No. CV 17-4250-DMG (JPRx), 2018 U.S. Dist. LEXIS 218854, at *8 (C.D. Cal. May 23, 2018) in which the Court held that USCIS approved a change of status to H-1B for a fiscal year even before the fiscal year began. If the USCIS has the authority to approve petitions before the start of the fiscal year then certainly its regulations do not require it to reject petitions requesting such an early start date. Even if the USCIS claims the right to arbitrarily to decide which such petitions to approve and which to reject, it is required to articulate some rational explanation for its exercise of that discretion. *Wing Ding Chan v. Immigration & Naturalization Serv.,* 203 U.S. App. D.C. 396, 631 F.2d 978, 983 (1980) ("the denial of suspension of deportation the denial of suspension (of deportation) to an eligible alien would be an abuse if it were made without a **rational explanation**, inexplicably departed from established policies", *quoting Wong Wing Wang v. INS*, 360 F.2d 715, 719 (2d Cir. 1966)). Of course it did not do so here.


B.     *USCIS'S DECISION OF JULY 12, 2018 WAS ARBITRARY BECAUSE IT DID NOT EXPLAIN ITS DEPARTURE FROM ITS PRIOR PRACTICE OF APPROVING H-1B PETITIONS WITH START DATES LATER THAN THOSE REQUESTED IN THE PETITION*

As explained previously the rejection also represented an unexplained departure from USCIS's long standing practice of approving H-1B petitions with a start date after the starting date requested on the petition and such a departure renders the decision arbitrary and capricious. ECF Doc. 13-1 at 9. It is remarkable that USCIS makes no attempt to deny that it has such a practice. And well it doesn't because it is clearly spelled out in 8 C.F.R. § 214.2(h)(9)(ii)(B)[4] that it not only can, but "shall" approve a petition effective the date of approval, even if it requests an earlier start date. The USCIS's rejection notice offers no explanation of why it did not simply do so here. Neither does its opposition to D'Aquila's motion for summary judgment.

Again, even if the USCIS were to claim – which it doesn't and, in light of the word "shall" in the applicable regulation, almost certainly can't - that a decision by USCIS to approve a petition for only part of the period sought is within the agency's discretion, it abused that discretion by failing to provide a reason – even at this late date – why it chose not to do so.

II. USCIS'S DECISION OF MARCH 12, 2019 REJECTING D'AQUILA'S MOTION TO RECONSIDER AND REOPEN WAS UNLAWFUL AND SHOULD BE SET ASIDE AS NOT IN ACCORDANCE WITH LAW, ARBITRARY AND AN ABUSE OF DISCRETION

As D'Aquila showed in his opening statement, ECF Doc. 13-1 at 11-12, the USCIS's stated reason for rejecting its motion to reconsider and reopen, that "(y)ou cannot appeal or file a motion to reconsider or reopen the rejection of a petition"[5], was not only simply untrue (there is, of course, no regulation prohibiting motions to reconsider or reopen rejections and 8 C.F.R. §

---

[4] 8 C.F.R. 214.2(h)(9)(ii)(B) expressly provides in relevant part that "(i)f a new H petition is approved after the date the petitioner indicates that the services or training will begin, the approved petition and approval notice **shall** show a validity period commencing with the date of approval …" (emphasis added).
[5] CAR 1.

103.5 expressly permits them) but twisting the plain language of the regulations to prohibit them would run afoul of canons of construction enshrined in at least 2 Supreme Court decisions and one decision of the Board of Immigration Appeals. In response the USCIS argues as follows:

1. Because the Initial Petition was rejected as improperly filed and did not retain a filing date, there was no underlying petition or merits-based decision on which to file a motion seeking reopening or reconsideration.

2. Three (3) discrete rules of statutory construction should, on the authority of a single Supreme Court dissent, be superseded by one obscure canon,[6] "*ex abundanti cautela* (an abundance of caution), which provides that a court should not apply a canon of construction if doing so would cut against the intention behind, or ordinary meaning of, the text".

3. The rule against superfluousness should not be applied if it cuts against the plain meaning of the text, again, based upon a single dissent.

4. *expressio unius* "must be applied with a certain degree of caution."

5. The agency's interpretation is not "'plainly erroneous or inconsistent with the regulation,'"

---

[6] The late, much lamented Justice Antonin Scalia did not even deign to mention it in his authoritative treatise on statutory construction: *Scalia and Garner's Reading Law: The Interpretation of Legal Texts,* Thomson West.

ECF Doc. 14-1 at 17-19.

None of the agency's arguments have merit.

1. The argument that just because the initial petition was rejected as improperly filed and did not retain a filing date, there was no underlying petition or merits-based decision on which to file a motion seeking reopening or reconsideration simply misses the point. Obviously if the motion to reconsider or reopen is granted that nullifies the rejection and so restores the filing date, inasmuch as the grant of a motion to reopen negates any final decision previously made in the reopened proceedings. *See In re Mendez*, **2007 Immig. Rptr. LEXIS 5866** (BIA 2007) ("the effect of reopening will be to vacate the original order of deportation that terminated her LPR status.")[7]

In any event, the fact that the Administrative Appeals Office Practice Manual states it will deny (not reject) motions to reopen rejected appeals is of little or no significance in that even the AAO itself does not consider such Manuals biding upon it. To quote the AAO:

> USCIS memoranda articulate internal guidelines for agency personnel; they do not establish judicially enforceable standards. Agency interpretations that are not arrived at through precedent decision or notice-and-comment rulemaking--such as those in opinion letters, policy statements, agency manuals, and enforcement guidelines--lack the force of law and do not warrant Chevron-style deference. Christensen v. Harris County, 529 U.S.

---

[7] Attached as Exhibit H.

576, 587 (2000) . An agency's internal guidelines "neither confer upon [plaintiffs] substantive rights nor provide procedures upon which [they] may rely." Loa-Herrera v. Trominski, 231 F.3d 984, 989 (5th Cir. 2000) (quoting Fano v. O'Neill, 806 F.2d 1262, 1264 (5th Cir. 1987)) . Agency policy memorandum and unpublished decisions do not confer substantive legal benefits upon aliens or bind [*58] USCIS. Romeiro de Silva v. Smith, 113 F.2d 1021, 1024 (9th Cir. 1985) ; see also Prokopenko v. Ashcroft, 372 F.3d 941, 944 (8th Cir. 2004) .

*IN RE: Petitioner: [redacted]* 2009 Immig. Rptr. LEXIS 7453, WAC 08 207 50753.[8]

Nor does the USCIS explain why if it wished to bar motions to reopen or reconsider rejections it would not simply say so, as it said it was barring appeals, rather than relying upon such a amorphous and indirect argument such as a rejection can't be reopened because it lacks a filing date, an argument existing only in a source that the agency itself does not consider binding,?

Furthermore the agency also fails to explain why if the lack of a filing date *sub silentio* bars motions to reconsider and reopen, why then does it not also bar appeals? And if it does, then, of course, the USCIS's argument is even more at odds than it is already with what our Supreme Court has described as "**one of the most basic** interpretive canons,

---

[8] Attached as Exhibit I.

that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'*Hibbs* v. *Winn*, 542 U.S. 88, 101, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp 181-186 (rev. 6th ed. 2000); footnote omitted)." *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566 (2009) (emphasis added).[9]

The agency does not even attempt to answer the question of why the regulations would expressly forbid appeals of rejections if the nullification of the rejected request's filing date was all that was needed to bar such an appeal. The USCIS simply cannot get around the fact that the regulations' express prohibition of appeals of rejections virtually dictates that motions to reconsider and reopen them are allowed. Any other interpretation would not only be contrary to the plain language of 8 C.F.R. § 103.5 but would also contravene "one of the most basic" interpretative canons", that against superfluousness.. If motions to reopen or reconsider are barred by a lack of a filing date for a rejected benefit request, then so are appeals, and so the express prohibition of appeals is superfluous. Therefore no such implied bar exists either for motions or appeals. Instead, the plain language of the regulations control. Appeals of rejections are barred; motions are not.

2. Not only can USCIS cite but a single dissent in support of the obscure "ex abundanti cautela" canon, but it doesn't even explain how it relates to this matter inasmuch as it

---

[9] Rules of regulatory interpretation follow those of statutory. *Matter of H-N*, 22 I. & N. Dec. 1039, 1041 (B.I.A. October 13, 1999).

offers no evidence regarding the intention behind the regulations in question, and their ordinary meaning is simply that 8 C.F.R. § 103.5 authorizes motions to reopen or reconsider except "where the Board has jurisdiction and as otherwise provided in 8 CFR parts 3, 210, 242 and 245a,", none of which apply here. . Nowhere is there any rule that even suggests that there is an exception for rejections, and 3 rules of statutory construction, including "one of the most basic interpretative canons", the one against superfluousness, says there is not.

3. Ditto the USCIS's reference to Scalia's dissent in *Moskal v. United States,* 498 U.S. 103, 120 (1990). Justice Scalia demonstrated in that opinion with his customary thoroughness just how the application of the rule against superfluousness would run contrary to the plain meaning of the text under consideration. By contrast, USCIS fails to explain how applying any of the 3 canons relied upon by D'Aquila runs contrary to the plain meaning of the regulations under consideration here. To the contrary, they reinforce it.

4. Further, D'Aquila does not dispute that expressio unius, "must be applied with a certain degree of caution.". If D'Aquila was only relying upon it there would be some merit to that argument. But it is only one of 3 rules of construction he relies upon.

5. Finally, the USCIS falls back upon *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905 (1997) to claim that the court must defer to the agency's interpretation of its regulations. But its argument is doubly flawed:

First, The Supreme Court held in *Auer* itself that it would not defer to a regulatory interpretation apparently adopted primarily for the purpose of defending the agency against attack in the instant case. It chose to defer to the agency interpretation in *Auer* because "(t)here is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462. Here however there is simply no reason to even suspect that the interpretation in question **does** reflect the agency's fair and considered judgment on this issue.  In fact, the USCIS has been unable to point to any binding authority, or even a single case, showing that it even *has* a policy of refusing to consider motions to reopen the rejection of benefit requests at all. Nor does it explain why if it had such a policy, the agency itself was apparently unaware of it and so accepted D'Aquila's motion for filing, on August 24, 2018, ECF Doc. 7-6,  and only rejected it more than 6 months later, on March 12, 2019, after D'Aquila filed an action for mandamus to compel a decision on it. ECF Doc. 1, CAR 1-2. In fact, there is nothing in the record to show that such a policy even existed before this motion was rejected, and it appears to be not at all coincidental that the agency didn't realize that it even had such a "policy" until just one month and one week after the U.S. Attorney appeared upon its behalf. ECF Doc. 3.

Second, and far more importantly, whatever conceivable merit there might be to this argument has been thoroughly vitiated by the recent U.S. Supreme Court decision in *Kisor v. Wilkie*, No. 18-15, 2019 U.S. LEXIS 4397 (June 26, 2019). There the Court pointed out that **"*Auer*** deference is not the answer to every question of interpreting an agency's rules. Far from it. As we explain in this section, the possibility of deference can

arise only if a regulation is genuinely ambiguous. And when we use that term, we mean it—genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Kisor*, 2019 U.S. Lexis at *22-33.

There is actually nothing ambiguous here to begin with. 8 C.F.R. § 103.5 unambiguously permits motions to reopen and reconsider except under the limited and inapplicable conditions mentioned above and no regulation or case law anywhere else is to the contrary. But even if there were any ambiguity in this regulation it does not survive the application of 3 canons of construction including, most importantly, one of the most basic interpretative canons, that against superfluousness. Nor is any ambiguity interjected by the USCIS citation of three "canons", all of which can be summarized as saying merely that canons of interpretation cannot override the plain meaning of the statutory text. Well of course they can't, and the agency has offered no argument as to why they supposedly do here. To the contrary, the plain text of the regulations dictate that rejections can be reopened and reconsidered.

Accordingly, both the plain language of the regulations and the application of 3 different canons of statutory construction all lead to the same conclusion – the USCIS had no lawful basis for its much delayed rejection of D'Aquila's motion to reconsider and reopen.

II.  BECAUSE THE USCIS ERRED IN REJECTING D'AQUILA'S MOTION TO REOPEN IT ALSO ERRED IN REJECTING ITS PETITION OF AUGUST, 2018 FILED IN SUPPORT OF IT.

D'Aquila's H-1B petition of August, 2018 was not submitted to the USCIS directly for filing, but rather as evidence of the "new facts" that it would prove in reopened proceedings, as

required by 8 C.F.R. § 103.5(a)(2). Therefore whether it was properly rejected rises or falls on the issue of whether D'Aquila's motion to reopen was properly rejected and whether it could have been properly filed other than as an exhibit to that motion is irrelevant.

Incidentally, D'Aquila wishes to correct the record to the extent that it shows that its only payment filed with the motion to reopen was a check in the amount of $675. As shown in Exhibit C to its complaint (ECF Doc. 7-5 at 25), D'Aquila resubmitted with the motion to reopen all three checks (in the amount of $1,710) that it had previously filed in support of the initial petition.  To the extent that the record does not reflect that, it is wrong and needs to be corrected.

   III.   The USCIS has unlawfully withheld and unreasonably delayed a decision on the merits of D'Aquilla's petition and motion to reopen and reconsider by improperly rejecting them

While the USCIS claims to have decided D'Aquila's H-1B petition and motion to reopen and reconsider by rejecting them, where, as here, the rejections are improper, they have had the effect of unlawfully withholding and unreasonably delaying a decision on the merits of that petition and motion.. Therefore, when this Court orders the USCIS to accept for filing D'Aquila's petition and/or motion to reopen or reconsider its rejection, it should also order it to make a decision on the merits of that petition and/or motion(s) within 30 days of the Court's order. Respectfully submitted this 28th day of June, 2019

*s/Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway, Ste 307
New York, NY 10007
646-845-9895
michaelpiston4@gmail.com